**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| MARY ANN KING and PHILLIP KING | ) | |
| v. | ) | C.A. No.: 06-258S |
| STAPLES INC.; IZZY DESIGN JSJ CORPORATION; JOHN DOE COMPANY | ) | |

**IZZY DESIGN AND JSJ CORPORATION'S**
**STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants Izzy Design ("Izzy") and JSJ Corporation ("JSJ'), by their undersigned attorneys, submit the following Statement of Uncontroverted Facts, in support of their motion for summary judgment:

**STATEMENT OF UNCONTROVERTED FACTS**

1. Plaintiffs filed a twelve count complaint against Staples, Inc., Izzy, JSJ, and John Doe Company for injuries allegedly sustained on June 2, 2003 when the back of her chair broke, causing her to fall to the ground. *See* Exhibit A (Complaint).

2. Counts IV, V, and VI of plaintiffs' Complaint are directed towards Izzy and assert causes of action for Strict Liability, Breach of Warranty, Negligence and Loss of Consortium. *See* Exhibit A (Complaint).

3. Counts VII, VIII, and IX of plaintiffs' Complaint are directed towards JSJ and assert causes of action for Strict Liability, Breach of Warranty, Negligence, and Loss of Consortium. *See* Exhibit A (Complaint).

4. JSJ Corporation has never manufactured or sold chairs under the Superior or Superior Centron brand. *See* Exhibit B (Affidavit of Michael D. Metzger at ¶¶ 3 and 4).

5. From 1988 until December 15, 2000, JSJ Corporation owned 100% of the stock of JSJ Seating Corporation, which at various times conducted business under the names Superior Chaircraft Corporation and Superior Chair. JSJ Seating Corporation was reorganized as a limited partnership in 2000, with Counter Point Furniture Products, Inc., owning 1% and JSJ Asia-Pacific Corporation owning 99%. Effective December 31, 2000 the statutory conversion to that partnership became effective with the new name of JSJ Seating Company Texas, L.P. *See* Exhibit B (Affidavit of Michael D. Metzger at ¶¶ 3 and 4).

6. JSJ Seating Company Texas, L.P. and the predecessor entity, JSJ Seating Corporation, sold Superior Centron chairs prior to 2003. *See* Exhibit B (Affidavit of Michael D. Metzger at ¶ 5).

7. Plaintiffs allege that the chair was designed and manufactured by JSJ Corporation, Izzy Design and/or by John Doe Company and that the chair was in substantially the same condition as when it was sold to her employer. *See* Exhibit A (Complaint at ¶¶ 13 and 15).

8. Plaintiffs allege that King was injured while an employee of Texas Instruments, when the back of the chair broke, causing her to fall to the ground. *See* Exhibit A (Complaint at ¶¶ 10 and 17).

9. Plaintiffs allege that King was seated in a "Superior" Centron office chair at the time of the alleged incident. *See* Exhibit A (Complaint at ¶ 11); Exhibit I (Plaintiff's Interrogatories to Defendant Izzy Design at ¶ 1).

10. King's belief that the chair at issue was a "Superior" Chair was based upon her belief that Texas Instruments only purchased "Superior chairs". *See* Exhibit C (Volume I of Mary Ann King's Deposition at 35:11-35:17).

11. According to Pamela McGee, King's co-worker, McGee's boss told her the chair that caused King's alleged injury was an Imperial Chair. *See* Exhibit D (Deposition of Pamela McGee at 19:06-19:10).

12. There were Imperial chairs on site at Texas Instruments. *See* Exhibit D (Deposition of Pamela McGee at 122:02-122:04).

13. There were eight or nine different styles of chairs on site, including chairs made by Miller Axis, Herman Miller, Steelcase and Imperial. *See* Exhibit D (Deposition of Pamela McGee at 50:19-50:23; Exhibit E (Deposition of Russell Loxley at 28:19-29:01); Exhibit G (Deposition of Jim Drews at 14:10-15:05).

14. Mr. Loxley was the first person to touch the Chair, which was in two pieces after the incident and was present within minutes of the accident. *See* Exhibit E (Deposition of Russell Loxley at 17:13-18:13, 21:19-21:21 and 24:09-24:17).

15. Mr. Loxley immediately took the chair to his area and within a week, removed the existing screws and used new screws to re-attach the back of the chair to the base. He retained possession of the chair until it was repaired and believes he fixed it before anybody else looked at the chair. *See* Exhibit E (Deposition of Russell Loxley at 23:22-24:17, 43:7-3:18 and 25:18-25:20).

16. After he repaired the chair, Mr. Loxley placed it in the hallway, where it remained for one to two months. *See,* Exhibit E (Deposition of Russell Loxley at 30:23-31:12).

17. Mr. Loxley testified that the heads had snapped off of the heads of two screws attaching the back to the case. He did not retain the screw or the heads that had broken off. *See* Exhibit E (Deposition of Russell Loxley at 22:09-23:04, 23:17-24:08, and 35:2-35:9).

18. Mr. Loxley did not think the chair involved in the accident was a Superior chair. *See* Exhibit E (Deposition of Russell Loxley at 65:12-65:20).

19. Pamela McGee sat in proximity of King and never saw any kind of label on the Chair indicating that it was a Superior Chair. *See* Exhibit D (Deposition of Pamela McGee at 12:23-13:02 and 123:02-123:05).

20. The current location of the Chair is unknown and Natalia Mendes, the purchasing agent for Texas Instruments, believes the chair "is somewhere in the trash." *See* Exhibit C (Volume I of Mary Ann King's Deposition at 98:18-98:23; Exhibit D (Deposition of Pamela McGee at 53:21-54:11 and 68:01-68:08; Exhibit J (Deposition of Natalia Mendes at 21:25-22:13).

21. According to King, the chair that caused King's alleged injury had a knob to adjust the back of the chair. *See* Exhibit F (Deposition of Mary Anne King Vol. II at 37:15-37:22).

22. The Superior Centron chair does not have a knob to adjust the back height but rather the back height is adjusted by ratcheting the back up. *See* Exhibit G (Deposition of Jim Drews at 39:06-39:09; Exhibit H (Deposition of Daniel Vukcevich) at 171:06-171:17)

23. According to King, the chair that caused her alleged injury had levers on the side to recline the chair. *See* Exhibit F (Deposition of Mary Anne King Vol. II at 38:18-39:14).

24. According to King, the lever was a flat piece and operated by pushing it in and turning it to lock it in and lock it out. *See* Exhibit F (Deposition of Mary Anne King Vol. II at 58:22-59:06).

25. The Centron Superior chair does not have any levers that you push in and turn to lock in or lock out. *See* Exhibit H (Deposition of Daniel Vukcevich at 172:01-172:04).

26. Ms. King experienced problems with the Chair slipping out of the upright position every couple of months prior to the incident. *See* Exhibit F (Deposition of Mary Anne King Vol. II at 47:09-47:20 and 49:07-49:09).

27. Ms. King tried to remedy the problems with her Chair by herself and would "tighten it in." *See* Exhibit F (Deposition of Mary Anne King Vol. II at 49:10-49:14).

28. Ms. King also worked with the maintenance men who "tried to fix [it]...adjust everything...[and] make sure everything was alright." *See* Exhibit F (Deposition of Mary Anne King Vol. II at 54:01-54:10).

29. Several months before the accident King called, Peter Sauer, one of the maintenance men, who looked at the Chair and "tightened it in," "checked it out real good to make sure...nothing was gonna fall off" ...[and] ma[d]e sure everything was tight." *See* Exhibit F (Deposition of Mary Anne King Vol. II at 54:01-55:09 and 61:20-62:15).

30. Mr. Sauer or one of the other maintenance men told Ms. King that something on the chair was "stripped." *See* Exhibit F (Deposition of Mary Anne King Vol. II at 54:01-54:10).

31. Three days after the accident, Alan Brown found a chair he believed as involved in Ms. King's accident in a hallway outside of the crib where Ms. King was working, waiting to be discarded. *See* Exhibit K (Deposition of Alan Brown at 23:25-25:20, 119:02-119:09).

32. There was an empty assembly area next to Ms. King's work area, where approximately 40 chairs were piled up, waiting to be worked on or thrown away. *See* Exhibit K (Deposition of Russell Loxley at 11:18-13:01).

33. The chair Mr. Brown saw was a Superior Centron. *See* Exhibit K (Deposition of Alan Brown at 28:15-28:19). The back was not attached to that chair. Id. at 27:16-20, and 87:24-88:6

34. Mr. Brown placed the chair in a corner, and marked it with tape. *See* Exhibit K (Deposition of Alan Brown at 25:14-25:18).

35. On June 16, 2003, fourteen days after Ms. King's accident, Alan Brown and Jim Drews went to the location of the incident to look at the chair Mr. Brown had previously saved. *See* Exhibit K (Alan Brown Deposition at 50:09-50:11). Exhibit M (Incident Investigation Meeting Minutes).

36. The Centron chair Mr. Drews saw was in two pieces at the time. The back was not attached to the seat. He fixed that chair and returned it to Texas Instruments. *See* Exhibit G (Deposition of Jim Drews at 30:13-31:07).

37. The location of that chair Mr. Drews repaired is unknown. *See* Exhibit G (Deposition of Jim Drews at 41:22-41:24).

38. Certain users of Superior Centron chairs customers reported problems with loose backs. *See* Exhibit H (Deposition of Daniel Vukcevich at 69:06-69:13).

39. On September 29, 2000, a letter and product bulletin were sent to customers notifying them of problems with loose screws attaching the J-bars to Centron chairs that were manufactured before December 29, 1998. *See* Exhibit H (Deposition of Daniel Vukcevich at 73:21-74:12; Exhibit L (Letter dated September 29, 2000).

40. In 1998, Superior offered customers a way to make the back more stable, via the introduction of a third screw that secured the back to the base. *See* Exhibit H (Deposition of Daniel Vukcevich at 71:07-71:11).

41. There are no records regarding Texas Instruments' supplying or requisitioning of office equipment. *See* Exhibit J (Deposition of Natalia Mendes at 17:14-17:19).

42. Nobody knows where Ms. King's chair came from. *See* Exhibit K (Deposition of Alan Brown Dep. at 75:14-75:15).

**IZZY DESIGN AND JSJ CORPORATION**

By: /s/ Donna M. Lamontagne

Donna M. Lamontagne
Zizik, Powers, O'Connell, Spauling & Lamontagne, P.C.
40 Westminster Street, Suite 201
Providence, Rhode Island 02903
(401) 421-7110
(401) 421-7111 Fax

Eric D. Stubenvoll
Alika Moitra
Christensen & Ehret, LLP
222 West Adams, 21st Floor
Chicago, Illinois 60606
(312) 634-1014
(312) 634-1018 Fax
116424