UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MARY ANN KING<br>and PHILLIP KING | )<br>)<br>) | |
| v. | ) | C.A. No.: 06-258S |
| STAPLES INC.; IZZY DESIGN<br>JSJ CORPORATION;<br>JOHN DOE COMPANY | )<br>)<br>)<br>) | |

**IZZY DESIGN AND JSJ CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants Izzy Design ("Izzy") and JSJ Corporation ("JSJ'), by their undersigned attorneys, submit the following Memorandum of Law in support of their Motion for Summary Judgment:

## INTRODUCTION

This is a products liability case without a product and, consequently, a case based wholly on speculation. Plaintiff Mary Ann King contends she was injured when the heads of two screws broke on an office chair, causing the back to come loose from the seat. Plaintiff cannot identify the specific model or manufacturer. The chair was repaired. The broken screws were discarded. The mystery chair was then either lost, discarded or placed back into service by her employer. It is thus not available for inspection. Consequently, we have no information as to when it was manufactured, by whom it was manufactured, when it was sold, its condition at the time of the accident or the nature and effect of any repairs or modifications to the chair between the time of sale and the accident.

The inability to locate the chair is fatal to plaintiffs' claims. At the most basic level, plaintiffs cannot prove that Izzy or JSJ manufactured the lost chair.[1] The description of the chair provided by Ms. King does not match that of a Superior Centron. The co-worker who repaired it after the accident testified that he did not believe it had the same features as the Superior Centron. The case law is clear that defendants cannot be held liable based upon conjecture that they may have manufactured a missing product.

Even if it was a Superior Centron chair, plaintiffs cannot prove that a design or manufacturing defect caused the accident. The screws that allegedly broke were discarded. Without examining the screws or the chair, we will never know why the chair broke. There could have been an error in assembly. There could have been a mistake when it was repaired or undergoing maintenance, which the testimony suggests occurred. Without definitive evidence as to the condition of the chair at the time of the accident, we can only speculate. Liability cannot be based upon speculation.

In the end, all plaintiffs have to support their case is conjecture and some evidence that certain Superior Centron chairs manufactured during a limited period of time had problems with loose backs. Inference, however, is no substitute for actual evidence. The fact that the alleged accident conveniently mirrors a problem with that model chair does not relieve plaintiffs of their burden of establishing that defendants' conduct proximately caused this injury. Plaintiffs could never meet that burden, as a matter of law. Summary judgment is proper.

## FACTS

Plaintiffs Mary Anne and Phillip King filed a twelve count complaint against Staples, Inc., Izzy, JSJ, and John Doe Company for injuries allegedly sustained by Ms. King when the

---

[1] As will be made clear below, JSJ has never manufactured or sold Superior brand chairs and could never be a proper defendant.

back of her chair broke, causing her to fall to the ground. (*See,* Statement of Uncontroverted Facts ("SUF") at ¶ 1). Counts IV through IX are directed towards Izzy and JSJ and assert causes of action for Strict Liability, Breach of Warranty, Negligence and Loss of Consortium. (*See,* SUF at ¶¶ 2, 3).

Plaintiff's employer at the time, Texas Instruments, apparently lost the chair or placed it back into service soon after the accident, meaning it is unavailable for inspection by the parties. (*See*, SUF at ¶ 19). There are no records regarding the chair's sale. (*See*, SUF at ¶ 40, 41). Despite this, Plaintiffs' Complaint initially alleged that Ms. King was seated in a "Superior" office chair at the time of the alleged incident.[2] (*See,* SUF at ¶ 9). Written discovery subsequently made it clear that plaintiffs were focusing on a Superior model known as the Centron. (See, SUF at ¶ 9)

Ms King's deposition revealed that she did not know what chair was involved in her accident. Her personal belief that the chair was a "Superior" Chair turns out to have been based upon her mistaken belief that Texas Instruments only purchased "Superior" chairs. (*See,* SUF at ¶ 10). In fact, there were eight or nine different styles of chairs on site at Texas Instruments. This included Miller Axis, Steelcase, Herman Miller and "Imperial" chairs. (*See,* SUF at ¶ 12, ¶ 13). Notably, according to Pamela McGee, King's co-worker, McGee's boss told her the chair that caused King's alleged injury was an Imperial Chair. (*See,* SUF at ¶ 11).

Ms. King's description of the Chair does not comport with the Superior Centron either. According to Ms. King, her chair had a knob to adjust the back of the chair. (*See,* SUF at ¶ 20). The Superior Centron does not have a knob to adjust the back height. Rather, the back height is adjusted simply by ratcheting it up. (*See,* SUF at ¶ 21).

---

[2] Up until 2000, Superior brand chairs were manufactured by JSJ Seating Corporation and subsequently by JSJ Seating Company Texas, L.P. (*See*, SUF at ¶ 4-5). JSJ Corporation has never manufactured Superior or Superior Centron chairs. (*See*, SUF at ¶ 4).

According to Ms. King, her chair had a lever on the side to recline the chair. (*See,* SUF at ¶ 23). This lever was a flat piece and operated by pushing it in and turning it to lock it in and lock it out. (*See,* SUF at ¶ 24). The Superior Centron does not have any levers that you push in and turn to lock in or lock out. (*See,* SUF at ¶ 25).

With the parties being unable to establish the chair's origin from Ms. King, they turned to other witnesses. Alan Brown, a Texas Instruments employee, initially testified that three days after the accident, he found what he thought was the chair involved in the accident, a Superior Centron with the back separated from the seat. (*See,* SUF at ¶ 31, 33). It was sitting outside of the area where Ms. King's "crib" was located, which it turns out was also right next to the area where approximately 40 other chairs were sitting, waiting for maintenance or to be discarded. (*See,* SUF at ¶ 31, 32). Mr. Brown placed the chair in a corner and marked it with yellow tape. (*See,* SUF at ¶ 32).

At least one week later, Mr. Brown showed Jim Drews, an employee of defendant Staples, Inc., that same Superior Centron. (*See*, SUF at ¶ 35). The chair was still in two pieces at the time. The back was not attached to the seat. (*See,* SUF at ¶ 36). Mr. Drews subsequently fixed that chair and returned it to Texas Instruments. (*See*, SUF at ¶ 36). The location of that chair is unknown. (*See,* SUF at ¶ 37).

This testimony created somewhat of a mystery. While Mr. Brown and Mr. Drews saw a Centron chair, that clearly did not coincide with the chair Ms. King described. Another Texas Instruments employee, Russell Loxley, solved the mystery. Mr. Loxley was the first person to touch the chair after the incident and was present within minutes of the accident. (*See*, SUF at ¶ 14). Mr. Loxley testified that the heads were snapped off the screws that had attached the back to the seat of the chair. (*See*, SUF at ¶ 17). He immediately took the chair to his work area and,

within a few days of the accident, removed the existing screws and reattached the back with new screws. He had possession of the chair until it was fixed. He did not retain the screws or the heads that had broken off. (*See*, SUF at ¶ 15, 17). Notably, he did not think the chair involved in the accident was a Superior chair. (*See*, SUF at ¶ 18). Once it was repaired, he put it back in the hallway where it remained for one to two months. (*See*, SUF at ¶ 16).

The only logical conclusion from Mr. Loxley's testimony is that the chair Mr. Drews and Mr. Brown saw was not Ms. King's chair, but another one waiting to be repaired or discarded. Not only did Mr. Brown not see the chair for three days, well after the time Mr. Loxley had taken possession, but that chair was still in two pieces when shown to Mr. Drews ten days after the accident (*See*, SUF at ¶ 36). By that time, Mr. Loxley had repaired Ms. King's chair.

The only additional information known about the chair involved in the accident relates to problems Ms. King experienced with that chair prior to the incident. Ms. King reported problems with the chair slipping out of the upright position every couple of months prior to the incident. (*See*, SUF at ¶ 26). Ms. King tried to remedy the problems with her Chair by herself and would "tighten it in." (*See*, SUF at ¶ 27). Ms. King also worked with the maintenance men who "tried to fix [it]…adjust everything…[and] make sure everything was alright." (*See*, SUF at ¶ 28). Several months before the accident King called, Peter Sauer, one of the maintenance men, who looked at the Chair and "tightened it in," "checked it out real good to make sure…nothing was gonna fall off" …[and] ma[d]e sure everything was tight." (*See*, SUF at ¶ 29). He told her it was a little "stripped." (*See*, SUF at ¶ 30).

Finally, as plaintiffs will no doubt attempt to submit it as evidence in opposition to this motion, it should be pointed out that Texas Instruments experienced problems with loose backs on Centron chairs. (*See*, SUF at ¶ 38). This involved chairs manufactured before

December 29, 1998. At some point, JSJ Seating Company Texas, LLP offered customers a way to make the back more stable, via the introduction of a third screw that secured the back to the base. (*See*, SUF at ¶ 39-40).

**STANDARD OF REVIEW**

Under F.R.C.P. 56(c), summary judgment shall be granted to the moving party where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Cardillo v. Cardillo, et al*, 360 F.Supp. 2d 402 (D. R.I. 2005). Furthermore, "[w]hen a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials in the adverse party's pleading, but an adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. F.R.C.P. 56(d); *See also, Stonkus v. City of Brockton School Department, et al.*, 322 F.3d 97 (1st Cir. 2003).

**ARGUMENT**

Plaintiffs' case fails for multiple reasons. To begin with, plaintiffs cannot establish that Izzy or JSJ manufactured the Chair. Even if plaintiffs could overcome that insurmountable hurdle, the case still fails because there is no information regarding the condition of the chair at the time of the incident. Consequently, plaintiffs could never establish that any design or manufacturing defect caused the accident. These problems are fatal to plaintiffs' claims. A products liability case simply cannot go forward when the product is missing and no one knows who manufactured it or what condition it was in at that time of the accident. Summary judgment is proper.

***A. The Strict Liability Claim Fails As A Matter Of Law Because King Cannot Establish That Defendants Manufactured The Chair***

**1. Applicable Law**

To recover under a theory of strict liability, plaintiff must show: (1) the seller is engaged in the business of selling such a product; and (2) the product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. *Ritter v. Narragansett Electric Co.*, 283 A.2d 255, 261 (1971). It is axiomatic that a plaintiff must prove that the proximate cause of his or her injuries was the defendant's product. The identification element of causation-in-fact requires the plaintiff to establish a sufficient connection between the product and its alleged manufactured or supplier. *Clift v. Vose Hardware, Inc., et al.*, 848 A.2d 1130, 1132, (R.I. 2004) *citing 1 Louis R. Frummer & Melvin I. Friedman, Products Liability*, §3.04[I] at 3-46 to 3-48 (2002). Although in some instances, circumstantial evidence may be used to establish the identity of the manufacturer or the seller of a defective product, such evidence must establish that it is reasonably probably, not merely possible, that the defendant was the source of the offending product. Mere speculation, guess or conjecture is insufficient to establish identification. *Id.* at 1132 *citing 1 Louis R. Frummer & Melvin I. Friedman, Products Liability*, §3.04[I] at 3-50 to 3-50.1.

**2. JSJ Cannot Be Held Liable Because it Did Not Manufacture or Sell this or any other Chair.**

While JSJ owns an interest in a company that manufactured Superior Centron chairs, they are separate corporations. (*See*, Exhibit B at ¶ 4). Liability cannot attach. "'[T]he mere fact that there exists a parent-subsidiary relationship between the two corporations is insufficient reason to impose liability on the parent for the torts of the subsidiary.'" *Infinite Group. Inc., v. Spectra Science Corporation, et al.*, 2004 R.I.Super. LEXIS 204 at *12 *citing Miller v. Dixon*, 513 A.2d 597, 604 (R.I. 1986).

**3. Plaintiffs Cannot Establish That Izzy (or JSJ) Manufactured the Chair**

Without the chair itself, or concrete evidence as to its origin, plaintiffs cannot establish causation-in-fact. The chair is missing. There are no pictures, no documents regarding its sale or maintenance. This leaves only eyewitness testimony to identify the chair and establish its condition at the time of the accident. That evidence refutes the claim that the chair was a Superior Centron. To begin with, Ms. King's initial assumption that it was a Superior Chair was based upon her mistaken belief that Texas Instruments only used Superior Chairs. In fact, there were eight or nine different styles of chairs on site from various manufacturers. (*See*, SUF at ¶ 12, 13).

Ms. King's description of the chair also eliminated the Centron. Ms. King testified that, to adjust the back on the chair, there was a round knob on the back that turned. (*See,* SUF at ¶ 21). The Centron has never had such a knob. Rather, the back height is adjusted simply by ratcheting the back up. (*See,* SUF at ¶ 22). Ms. King also testified there were levers to move the chair up and down under the bottom of the seat that the user had to push it in and turn it to lock in or lock out. (*See*, SUF at ¶¶ 23, 24). The Centron has no such levers. (*See*, SUF at ¶ 25).

In addition, the individual who repaired Ms. King's chair did not think the chair involved in the accident was a Superior chair. (*See*, SUF at ¶ 18). Another witness testified she was told it was an "Imperial" chair. (*See,* SUF at ¶ 11).

The case law makes it clear that defendants cannot be held liable on this evidence. In *Clift v. Vose Hardware, Inc.*, 848 A.2d 1130 (R.I. 2004), the plaintiff was working at a hardware store when a bungee cord hit him in the eye, causing him to lose his sight. After being treated for his injuries, plaintiff returned to pick up the cord, but was told it had already been sold. The plaintiff filed suit against his employer as well as the manufacturer and retailer of the bungee cord for negligence, breach of warranty and strict liability. *Id.* at 1131-1132. The Rhode Island

Supreme Court affirmed the trial court's award of summary judgment, holding that a products liability claim in which the product is discarded would not survive unless there are supporting affidavits attached that contain specific facts and evidence regarding who actually sold and manufactured the product. *Id.* at 1133.

This case is no different. There is no evidence establishing that defendants manufactured or sold the chair. There are no bills of lading, no pictures, nor any other documents to establish this chair's origin. Ms. King's own testimony describes a different chair. Accordingly, plaintiffs' claims fail.

Given this insurmountable hurdle, plaintiffs may attempt to create an issue of fact by pointing to the testimony of Alan Brown and Jim Drews in which they describe a Superior Centron as the chair they believed was involved in the accident. That argument does not withstand scrutiny. To begin with, Mr. Brown did not see the chair he thought was involved for three days. He has no personal knowledge as to whether that was the chair. The same is true for Mr. Drews, whose understanding is not based on first hand knowledge. (*See*, SUF at ¶ 35). That testimony is thus inadmissible hearsay. More importantly, it is clear that neither Mr. Brown nor Mr. Drews saw the actual chair. The chair that Mr. Brown and Mr. Drews saw was in two pieces ten days after the accident. (*See*, SUF at ¶ 36). Mr. Loxley testified unequivocally that he reattached the back to the chair within just a few days of the accident and had possession of the chair until repairs were completed. (*See*, SUF at ¶ 15, 16). Accordingly, the chair referenced in Mr. Drews' and Mr. Brown's testimony could not have been the chair involved in Ms. King's accident.

### *B. Izzy and JSJ Are Not Strictly Liable For Plaintiff's Injuries Because There Is No Evidence That A Defect Existed At the Time of Manufacture That Caused Plaintiff's Injuries*

The plaintiff has the burden of proving a defect in the design or manufacture that makes the product unsafe for its intended use, and also that the plaintiff's injury was proximately caused by this defect. *Thomas v. Amway Corp.*, 488 A.2d 716, 722 (R.I. 1985)(internal citations omitted). While a plaintiff is permitted to draw inferences of fact based on circumstantial evidence, simply establishing that use of the product resulted in injury will not satisfy the burden. *Id.*

Applying this law, plaintiffs' claims fail because they cannot establish that there was any defect at the time of sale. The inability to examine the chair is dispositive on this issue. There are numerous explanations as to why a back would come off of a chair. Not all constitute design defects. There could have been an error in assembly. There could have been an error in routine maintenance. The screws, which were discarded, could have been overtightened or stripped (something plaintiff was told had occurred). The chair could have been broken down from extensive use. We have no idea how old it was or how much it was used. Replacement parts could have failed. Not only are these scenarios possible, but likely given Ms. King's testimony that her chair had problems that Texas Instruments tried to fix.[3] Plaintiff cannot meet her burden based on speculation.

The case law is instructive. In *Olshansky v. Rehrig International et al.*, 872 A.2d 282 (R.I. 2005), plaintiff filed suit resulting from injuries sustained when the basket portion of a shopping cart came apart from the wheels, causing him to fall to the floor. *Id.* at 286. The Rhode Island Supreme Court affirmed the award of summary judgment on plaintiff's strict liability claim. The

3 A manufacturer is not strictly liable for injury where there has been a substantial change in the product after its sale. *See, William Simmons v. Lincoln Electric Co.*, 1995 R.I. Super. LEXIS 131 ( "a subsequent alteration or modification to a product which is a substantial cause of plaintiff's injuries absolves the products liability defendant from liability"); *Plante v. American Honda Motor Co, Inc.*, 27 F.3d 731 (1st Cir. 1994). In this case, the modifications of the chair repairs appear to relate to the very defect alleged to have caused the incident. Thus, Ms. King's accident may have stemmed from the subsequent repairs to the chair. We will, however, never know because the chair is gone.

Court reasoned that without the cart and without expert testimony, plaintiffs could not establish whether a defect existed at the time the cart left defendant's possession or whether the defect caused plaintiff's injury. The Court noted that the strict liability count could not survive in the absence of expert testimony regarding whether the defect was present, whether that defect was attributable to the manufacture, design, maintenance or some other factor, and whether such a defect could cause the harm plaintiff suffered. *Id.* at 287.

In the case at bar, the uncontroverted facts are four square with those of *Olshansky*. Plaintiffs could never establish that any design or manufacturing defect proximately caused the accident. As noted above, there are numerous possible explanations as to why the back failed. Proving that the chair was involved in an accident is simply not enough to prove proximate cause. *Thomas v. Amway Corp.*, 488 A.2d at 722. It would be mere speculation as to whether there was a defect in the Chair at the time of sale or whether an alleged defect caused King's injury. Accordingly, King cannot establish the prima facie elements necessary to sustain a cause of action.

***C. Plaintiff King's Claim for Negligence Fails As A Matter Of Law Because She Cannot Establish The Existence Of A Duty Or Proximate Cause***

In any negligence action, a plaintiff must establish that: (1) defendant had a duty to the plaintiff; (2) defendant failed to perform that duty; (3) defendant's breach was the proximate cause of the plaintiff's injury; and (4) resulting injury and actual loss or damage. *Mills v. State Sales, Inc. et al*, 824 A.2d 461, 467-68 (R.I. 2003). To prevail in a negligence action a plaintiff must show that the defendant' negligence was the proximate cause of the plaintiff's injury. *Kennedy v. Tempest*, 594 A.2d 385, 388 (R.I. 1991). Causation "must be established by competent evidence and may not be based on conjecture or speculation." *Martinelli v. Hopkins, et al.*, 787 A.2d 1158, 1169 (R.I. 2001).

As discussed fully above, plaintiff cannot establish that Izzy or JSJ manufactured the chair and thus cannot establish the existence of a duty. Further, there is no evidence whatsoever that any negligence by Izzy or JSJ proximately caused King's injury. Without examination of the chair, it is impossible to determine the cause of plaintiff's injury. *See, Olshansky v. Rehrig International et al.*, 872 A.2d at 286-87; *Clift v. Vose Hardware, Inc., et al.*, 848 A.2d at 1131-1133. Again, proximate cause cannot be based upon speculation. *Martinelli v. Hopkins, et al.*, 787 A.2d at 1169.

The case law is again instructive. In addition to the analysis in *Olshansky* and *Clift*, in *Russian v. Life-Cap Tire Services, Inc., et al.*, the plaintiff filed suit for injuries resulting from a fall on Life-Cap Tire Services, Inc.'s ("Life-Cap") premises. 608 A.2d 1145, 1146 (R.I. 1992). The trial court granted Life-Cap's motion for summary judgment because plaintiff failed to establish defendants' action as the proximate cause of his injury. The appellate court affirmed, noting that " the mere happening of an accident does not in and of itself necessarily warrant a reasonable and legitimate inference of negligence." *Id.* (internal citations omitted). Plaintiff failed to identify anything that the Life-Cap did that caused him to fall. Plaintiff's failure to present evidence by affidavit or deposition showing proximate cause by direct allegation or by legal inference was a failure to satisfy a necessary element of the claim. *Id.*

This case is no different. The mere fact that the chair broke is insufficient to establish proximate cause. That is ultimately the only evidence plaintiff can submit. That it is not enough and summary judgment is proper, as a matter of law.

***D. King's Claim For Breach of Express and Implied Warranties Count Fail As A Matter of Law Because Plaintiff Cannot Prove The Existence Of A Defect or Proximate Cause***

Plaintiffs allege defendants breached express and implied warranties because the Chair "did not comply with said warranties in that it was in a defective condition and was not fit for its ordinary purpose." (*See*, Exhibit A at Count V, ¶ 5 and Count VII, ¶ 5 ). To prevail on a breach of warranty claim, a plaintiff must show that the product is defective, that the defect as present when the product left the defendant's hands, and that the defect is the proximate cause of plaintiff's injuries. *Plouffe v. The Goodyear Tire & Rubber Co. et al.*, 373 A.2d 492, 495 (R.I. 1977). The implied warranty is breached when a product of fair average quality does not pass in the trade and is unfit for the ordinary purpose for which it is used. *Thomas v. Amway Corp.*, 488 A.2d at 719. The plaintiff must present evidence "from which a jury reasonably could have inferred that [the product]…would not pass without objection in the trade" or that it "was not of fair average quality or fit for the ordinary purpose of cleaning." *Id.* (granting defendant's Motion for Summary Judgment with respect to plaintiff's claim for breach of express warranty based on lack of evidence).

This count fails for the same reasons the strict liability and negligence counts fail. There is no evidence as to any defect and there is certainly no evidence that any such phantom defect proximately caused this accident. Moreover, without the chair or some evidence as to its condition at the time of sale, plaintiffs cannot establish that when the Chair was delivered to Texas Instruments, it would not have passed without objection in the trade or that the chair was not of fair average quality for its ordinary purpose.

Any claim for breach of express warranty would fail for the same reasons. In addition, plaintiff has the burden of proving that the statements or representations made by the seller induced her to purchase that product and that she relied upon such statements or representations. *Thomas v. Amway Corp.*, 488 A.2d at 720. Plaintiffs' Complaint is void of any such allegations.

***F. The Loss of Consortium Claim Fails As A Matter Of Law***

A loss of consortium claim depends on the success of the underlying tort claim. *Soares v. Ann & Hope of Rhode Island, Inc.*, 637 A.2d 339, 353 (R.I. 1994). Here, that claim fails with the ones upon which it is based.

**CONCLUSION**

For the foregoing reasons, Izzy and JSJ respectfully request entry of summary judgment in their favor on all of Plaintiffs' claims against them in Counts IV through IX of the Complaint, and for such other relief that is proper under the circumstances.

**IZZY DESIGN AND JSJ CORPORATION**

By: /s/ Donna M. Lamontagne
One of its attorneys

Donna M. Lamontagne
Zizik, Powers, O'Connell, Spauling & Lamontagne, P.C.
40 Westminster Street, Suite 201
Providence, Rhode Island 02903
(401) 421-7110
(401) 421-7111 Fax

Eric D. Stubenvoll
Alika Moitra
Christensen & Ehret, LLP
222 West Adams, 21st Floor
Chicago, Illinois 60606
(312) 634-1014
(312) 634-1018 Fax
108830