C&E Christensen & Ehret LLP
Illinois ◆ California

222 West Adams Street
Suite 2170
Chicago, Illinois 60606
Telephone (312) 634-1014
Facsimile (312) 634-1018
www.christensenehret.com

Eric D. Stubenvoll
estubenvoll@christensenehret.com

Writer's Direct Dial
(312) 214-5364

March 5, 2008

The Honorable Magistrate Judge David L. Martin
United States District Court
District of Rhode Island
Federal Building and Courthouse
One Exchange Terrace
Providence, Rhode Island 02903

RE: *Mary Ann King, et al. v. Izzy Design, et al.*
C.A. No.: 06-258S

Dear Judge Martin:

In response to Plaintiff's Statement of Additional Facts, submitted after oral argument on the pending summary judgment motion, and for purposes of the pending motion only, movants will not dispute the facts, except as set forth in the reply memorandum and below:

8. In April 1997, an independent facility --- SGS U.S. Testing Co., Inc.--- performed various tests for JSJ on a sample chair of the same type as the Superior Centron to assess compliance with national standards for general purpose office chairs.

**Disputed. Defendants dispute that plaintiff was sitting in the model or version of the chair involved in the referenced tests. (*See*, RA 13).**

11. As reported by SGS, the Superior Centron chair failed when, one-quarter of the way through the test, "the two screws attaching the control mechanism to the seat base sheared off."

**Disputed in part. Specifically, Defendants contest that plaintiff was sitting in the model, or version of the chair involved in the referenced tests. (*See*, RA 13).**

28. In spite of this and the fact that numerous letters were returned "undeliverable" and that many customers (retailers and distributors) responded that they had no records

identifying ultimate users, JSJ's Superior Furniture and Izzy, its successor, made no additional attempts to notify ultimate users of the loose-screw and back problems with Superior Centron chairs.

**Disputed. The evidence establishes that there were follow-up mailings. (See, Exhibit 1).**

29. In spite of the fact that it knew that its September 2000 letter and Product Bulletin did not reach hundreds if not thousands of ultimate users of Superior Centron chairs, JSJ and Izzy did not initiate a voluntary recall, issue a press release, publish a notice in a newspaper or other public media, or notify and government agency or consumer protection organization of the loose screw problems with the Centron chairs manufactured between 1996 and 1998.

**Disputed. The evidence establishes that there were follow-up mailings. (See, Exhibit 1). Further, Defendants deny that they were under any duty to initiate a voluntary recall, issue a press release, publish a notice in a newspaper or other public media, or notify and government agency or consumer protection organization of the loose screw problems with the Centron chairs manufactured between 1996 and 1998.**

34. When asked at deposition about the levers and knobs used to adjust the broken chair, Ms. King gave the best description she could, but indicated that she wasn't positive in her recollection because "[i]t's been so long."

**Disputed. With respect to the levers, Ms. King testified that she "kn[ew] you had to push it in, you know, turn it to lock it in and lock it out, you know. I know it was a lever. A flat piece." (See, Mary Anne King Dep. Vol. II at 58-59). Additionally, Ms. King unequivocally testified that the chair causing her alleged injury had a knob to adjust the back of the chair. (*See*, Mary Anne King Dep. Vol. II at 37).**

38. From these images, Ms. King positively identified the chair that broke apart on her as a Superior Centron.

**Disputed. Mrs. King was not able to swear to the fact that the image of the chair was indeed the chair that broke apart. Rather, she was only able to say that she is "confident" it is the same type of chair. Significantly, the image of the chair does not show all of the controls. (*See*, RA 80-85). Further, her identification of the chair is in direct contravention of her sworn deposition testimony in which she testified that to adjust the back on her chair, there was a round knob on the back that turned and there were levers to move the chair up and down under the bottom of the seat that the user had to push it in and turn it to lock in or lock out. (*See*, Mary Anne King Dep. at Vol. II at 37-39 and 58-59).**

42. According to Ms. McGee, the chair was then returned to McGee and King's work area, where Ms. McGee's boss, Ed Picard, tagged it and set it aside until Jim Drews, a salesman, inspected and collected it.

**Disputed. Ms. McGee did not specifically testify that the chair returned to McGee and King's work area was the chair involved in Ms. King's accident. (*See*, McGee Dep. at 32-33, 44-45, and 96-97).**

45. From photographs of two office chairs--one a Superior Centron, the other a "Miller"—Ms. McGee identified the Superior Centron as the type of chair that broke on Ms. King.

**Disputed. Ms. McGee was shown pictures of what purportedly was a Superior Centron and testified it resembled Ms. King's chair. (*See,* RA at 100-101 and McGee Dep. at 82-86).**

Should you have any questions, please do not hesitate to contact me.

Very truly yours,

Eric D. Stubenvoll

EDS\AM

122840